## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 17-cr-0158-RMC** |
| | : | |
| **v.** | : | |
| | : | |
| **KEITH D. FORNEY,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S CONSOLIDATED SENTENCING MEMORANDUM

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this consolidated sentencing memorandum for the sentencing of Keith Forney in case numbers 17-cr-158 and 17-cr-159.   The Government requests that the Court sentence the Defendant to 36 months of incarceration and three years of supervised release for count one in case number 17-cr-158, and order the Defendant to pay $92,908 in restitution to the IRS.   In case number 17-cr-159, the Government requests that the Court sentence the Defendant to 36 months of incarceration and three years of supervised release for Count One and Count Three to run concurrently to one another and concurrently to the sentence in case number 17-cr-158.   The Government requests that the terms of imprisonment for both federal cases run consecutively to the term of imprisonment imposed on the Defendant in Superior Court case number 2016 CF2 020697.

## I. THE APPLICABLE GUIDELINES RANGE

Under 18 U.S.C. § 3553(a), the Court must "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2).   The Guidelines range is one factor the Court must consider in determining an appropriate sentence.   See 18 U.S.C. § 3553(a)(4).   "As a matter of administration and to secure nationwide consistency, the

Guidelines should be the starting point and the initial benchmark" for a sentencing determination. Gall v. United States, 552 U.S. 38, 49 (2007); see also United States v. Cano-Flores, 796 F.3d 83, 90 (D.C. Cir. 2015) ("[T]he first step for the sentencing court is to calculate the [Sentencing Guidelines] range").

### A.   Guidelines Calculation for 17-cr-158

In the plea agreement, the parties agreed that the following Sentencing Guidelines sections apply to the Defendant's offense conduct in case number 17-cr-158 prior to any deduction for acceptance of responsibility:

| | | |
|---|---|---|
| USSG §2T1.1(a)(1) | Base Offense Level | 14 |
| | Level from §2T4.1 corresponding to the tax loss § 2T4.1(E) (More than $40,000) | |
| | Tax Loss: $92,908 ($90,625 + $2,283) | |
| | Offense Level | 14 |

### B.   Guidelines Calculation for 17-cr-159

In the plea agreement, the parties agreed that the following Sentencing Guidelines sections apply to the Defendant's offense conduct in case number 17-cr-159 prior to any deduction for acceptance of responsibility:

**Count One**

| | | |
|---|---|---|
| USSG §2B1.1(a)(2) | Base Offense Level | 7 |
| USSG §2B1.1(b)(1)(G) | Specific Offense Characteristic | 12 |
| | Loss Amount: $400,000 (More than $250,000) | |
| | Offense Level | 19 |

### Count Three

| | | |
|---|---|---|
| USSG §2S1.1(a)(1)(A) | Base Offense Level<br>(Offense Level for Underlying Offense) | 19 |
| USSG §2S1.1(b)(2)(A) | Specific Offense Characteristic<br>(Conviction under 18 U.S.C. § 1957) | 1 |
| | Offense Level | 20 |

### Grouping of Counts

Counts One and Three in case number 17-cr-159 group pursuant to USSG §3D1.2(c).   See USSG §2S1.1, comment. (n.6).   Under USSG §3D1.3(a), the offense level applicable to counts grouped pursuant to USSG §3D1.2(c) is the highest level of the grouped counts, which is offense level 20.   Id. §3D1.3(a)

### C.   Combined Offense Level for Multiple Counts of Conviction in Different Cases

The plea agreement did not address the combined offense level from both cases.   The Guidelines rules for determining a combined offense level from multiple counts of conviction apply when, as here, the counts are "contained in different indictments . . . for which sentences are to be imposed at the same time or in a consolidated proceeding."   USSG Ch. 3. Pt.D, intro. comment.

As detailed above, Count One and Count Three in case number 17-cr-159 group pursuant to USSG §3D1.2(c).   Count One in case number 17-cr-158 is not closely related to either of these counts.   It does not group with the counts in case number 17-cr-159 because it does not involve the same harm or victim.   See United States v. Doxie, 813 F.3d 1340, 1345 (11th Cir. 2016) ("not[ing] that the majority of circuits to address this issue have concluded that fraud counts and tax offense counts" do not group) (collecting cases).

3

The combined offense level for grouped counts one and three in case number 17-cr-159 and count one in case number 17-cr-158 is determined by applying USSG §3D1.4.   The combined offense level, as calculated below, is 21.

| | | |
|---|---|---|
| Group  I (group with highest offense level) | Offense Level 20 | One Unit |
| Group 2 | Offense Level 14 | One-Half Unit |
| | Total: | One and 1/2 Units (1 Level Increase) |
| Combined Offense Level | 20+1 | 21 |

### D.   Acceptance of Responsibility

The Defendant qualifies for a two-point reduction in his offense level under USSG §3E1.1(a).   The Government has filed a motion for an additional one-level decrease pursuant to USSG § 3E1.1(b). [1]   The Defendant's Total Offense Level with a three-point reduction for acceptance of responsibility is 18.

### E.   Criminal History

The Defendant was convicted of one count of Corrupt Election Practices, three counts of Second Degree Fraud; two counts of Perjury; and 11 counts of Contribution Limitations in Superior Court case number 2016 CF2 020697.   A copy of the Indictment is attached as Exhibit A.

The Defendant was sentenced to a total of 180 days incarceration for the 11 Contributions Limitations counts.   He received a 12 month sentence, execution of the entire sentence suspended,

---

[1]  The Government will move to withdraw the motion should the Defendant take any action inconsistent with acceptance of responsibility.

for each of the remaining counts.   Under USSG §4A1.1(b), the Defendant's convictions add two points to his criminal history score.

The Defendant was convicted of five counts Failure to Make a Return in Superior Court case number 2017 CRT 002713.   The Defendant was not sentenced to a term of imprisonment. Under USSG §4A1.1(c), the Defendant's convictions add one point to his criminal history score.

The Defendant's criminal history score is three with a corresponding criminal history category of II.

**Guidelines Range**

With a total offense level of 18 and a criminal history category of II, the Defendant's Guidelines range is 30 to 37 months of imprisonment.

For offenses committed prior to November 1, 2015, the Guidelines instruct the Court to apply the fine range in the 2014 version of the Guidelines.   USSG §5E1.2(h)(1).   The applicable fine range is $6,000 to $60,000.   USSG §5E1.2(c)(3) (Nov. 2014).

## II.   OTHER SENTENCING FACTORS

**The Nature and Circumstances of the Offense**

The Defendant's criminal conduct is egregious.   He engaged in a brazen scheme to fraudulently obtain the Maryland courts contract for Sharp Business Systems (SBS) with Forney Enterprises, Inc. (FEI) as the designated Minority Business Enterprise (MBE) subcontractor.   The MBE program was established to ensure that small, minority and women-owned firms have the opportunity to participate fully and fairly in Maryland state contracts.   FEI performed no work and provided no services on the Maryland courts contract.   The Defendant subverted the purpose of the MBE program.

2e1d4417d5a358c6

The Defendant fraudulently induced the State of Maryland to provide $400,000 to FEI by representing that FEI was actually going to perform on the contract.   The Defendant sent an email to the MBE compliance manager purporting to detail FEI's "contract scope of work and some information regarding the services we have provided thus far."   He attached a letter which was nothing more than a contrived cover story.   In the letter, the Defendant falsely claimed that FEI delivered copier parts.   He repeatedly lied on monthly work force rosters submitted to the MBE compliance officer.   He also submitted sham invoices to SBS for FEI's supposed work.

The Defendant used FEI as a "front" MBE to fraudulently obtain $400,000 from Maryland. The Defendant deposited his ill-gotten gains into an "off-the-books" SunTrust account.   The deposits were not entered into the FEI QuickBooks records.   FEI provided its QuickBooks records to a certified public accounting firm to prepare its financial statements.

The Defendant laundered the proceeds of his fraud by transferring his ill-gotten gains to his co-conspirator, John Vassos.   The $400,000 in Maryland taxpayer funds that should have gone to an MBE that legitimately performed on the contract ended up in the pocket of the Defendant's business crony.

The Defendant is a businessman, albeit a crooked one.   He did not transfer the funds to Vassos out of generosity or some noble purpose.   He knew that Vassos had access to capital, and that it was in the Defendant's financial interest to maintain good relations with Vassos.   Soon after the initiation of the Maryland Courts contract, Vassos provided approximately $2 million to the Defendant and his business partner to finance the purchase of the real property where Stadium Club was located.   Vassos also made personal loans to the Defendant.

It is the public policy of the State of Maryland to set aside tax dollars to benefit traditionally

disadvantaged business firms.   The MBE program attempts to not only level the playing field for disadvantaged firms when competing for contracts, but also provides invaluable experience and networking opportunities.   The government must rely on the integrity of its contracting process to attract and retain contractors to assist in its mission.   The Defendant undermined the foundation of the contracting process.   As articulated in the attached letter from Lynn Kelleher of the Maryland Administrative Office of the Courts, the Defendant's conduct left an indelible stain on the MBE program.   Ex. B.

Tax fraud is a serious offense.   See United States v. Antolik, No. A-15-CR-356-SS, 2016 WL 9686991, at *2 (W.D. Tex. Oct. 31, 2016), aff'd, 696 F. App'x 165 (5th Cir. 2017).   The Defendant "cooked" his company's books by knowingly classifying non-deductible business expenses as deductible.   The expenses included: reimbursements to individuals and entities for campaign contributions that the Defendant directed them to make; a $24,000 cash contribution to the Vincent Gray campaign;[2] payment to a law firm; payment for an employee's home renovation; and payments to a university for his child.

The most disturbing and revealing aspect of the Defendant's tax fraud was his inclusion of $168,000 in "consulting" payments to himself as a deductible business expense.   A certified public accounting firm that he had hired to prepare FEI's financial statements advised the Defendant that the consulting payments had to be reclassified as a non-deductible shareholder distribution.   A firm employee went to FEI and entered the adjustment in FEI's QuickBooks ledger.   The Defendant then deleted or caused the adjusting entry to be deleted.   The FEI QuickBooks records once again falsely reflected the $168,000 in consulting payments as a

---

[2] As discussed in further detail below, the reimbursements and the $24,000 contribution violated D.C. campaign finance laws.

deductible business expense.   The Defendant's conduct reflects his contempt for his tax obligations.

## The History and Characteristics of the Defendant

The Defendant served in the U.S. Air Force from 1983 to 1995 when he was honorably discharged.   The Defendant's military service is commendable.

However, as the owner of FEI, the Defendant has demonstrated that he is a corrupt businessman and tax cheat who has no regard for the truth.   His criminal conduct in the two federal cases is not an aberration.

The Defendant's fraud and perjury convictions in Superior Court case number 2016 CF2 20697 stemmed from the Defendant falsely claiming to live at a D.C. address in order to obtain preference points for FEI as a local business in bidding for D.C. government contracts.   The Contribution Limitations counts involved the Defendant violating D.C. campaign finance law by making eight illegal conduit contributions.   These contributions caused the Defendant to exceed the maximum allowable contribution amount which resulted in conviction on three additional counts.[3]   The Defendant's conviction for Corrupt Election Practices was based on his July 2007 application for D.C. voter registration in which he falsely certified that he was not registered to vote in any other jurisdiction when in fact he was registered to vote in Maryland.   He voted in both the District of Columbia and Maryland through 2014 and did not cancel his Maryland registration until 2015.

The Defendant's criminal conduct in the Superior Court case spanned more than a decade. The convictions strike at the integrity of core government functions: contracting, voting, and

---

[3] The Defendant was found guilty of violating D.C. campaign finance law after a stipulated trial.   The filed Stipulation of Facts is attached as Exhibit C.

elections.   He perverted these functions for his personal gain without any consideration of the impact on the public and other contractors.

**The Defendant's History of Campaign Finance Violations**

The campaign contributions that the Defendant falsely classified as deductible business expenses were violations of D.C. campaign finance law.   The Defendant's use of FEI funds to reimburse individuals and entities for campaign contributions that he directed them to make were illegal conduit contributions.   See D.C. Code §§ 1-1131.01(e), (g) (2011).   The $24,000 cash contribution to the Vincent Gray campaign violated the $2,000 limitation on contributions to mayoral candidates.   Id. § 1-1131.01(a)(1).

The Defendant's conduit contributions were part of a systematic multi-year effort by the Defendant to corrupt the electoral process to obtain favored status for FEI.   As detailed in the Declaration of Bryan Snitselaar attached as Exhibit D,[4] the Defendant used FEI funds to make 70 conduit contributions (not including the conduit contributions in the Superior Court case) through his employees, family members, and business associates to four D.C. political campaigns and three constituent services programs.[5]   The contributions totaled approximately $78,000, and were made from January 30, 2009, to May 3, 2011.   Snitselaar Dec. at ¶ 7.

The Defendant also engaged in a scheme to make an illegal campaign donation to a Costa Rican politician.   It is illegal under Costa Rican law for a foreigner to make a campaign donation. See How Latin America deals with campaign finance, The Economist, Mar. 14, 2017 ("All of

---

[4] Declarations are admissible at sentencing if "reliable."   United States v. Schaefer, 291 F.3d 932, 942 (7th Cir. 2002) (permitting declaration about fraudulent conduct not charged in the indictment).

[5] Constituent Service Program funds are supposed to be used for emergency, informational, charitable, scientific, educational, medical, or recreational services for D.C. residents.

Latin America except El Salvador bans foreign political donations.").

On October 9, 2012, the Defendant sent an email to co-Defendant Riad Sleit with the subject line "campaign donation."   Ex. E.   Vassos was copied on the email.   In the email, the Defendant told Sleit to "[p]lease make the check out to [a business associate of the Defendant], you cannot make a direct donation."   Id.   The Defendant asked Sleit to confirm a $10,000 donation.   Id.

On October 10, 2019, Vassos sent an email asking Forney to call him "to discuss."   Id. On October 12, 2019, Forney replied in an email, "From my perspective, not much to discuss, [sic] you folks needed to use me to make money at no cost, [sic] well there is always a cost and now I [sic] ve listed it, but I will see you today."   Id.

On October 12, 2019, Sleit sent an email to the Defendant asking for the address of the individual who would act as the conduit for the illegal contribution.   Ex. F.   The Defendant provided the individual's address in Costa Rica.   Id.

### The Defendant's False Statements to FBI

The Defendant blatantly lied to an FBI agent when initially interviewed.   He claimed that FEI provided meter reading and courier services to SBS.   Ex. G.   He also alleged that FEI had a "quasi-employee" who worked on the contract.

### Defendant's Violations of the Plea Agreement

During the plea colloquy, the Court went over the terms of the plea agreement. Specifically, the Court discussed the Defendant's understanding that the plea agreement was contingent upon, among other things, the Defendant "not filing an appeal or post-trial motion in case 2016 CF2 020697."   The Court also asked the Government if it was seeking the Defendant's

detention prior to sentencing.   The Government explained that it was not seeking detention as the Defendant was scheduled to report to the D.C. jail on August 19, 2019, to begin serving his sentence in case 2016 CF2 020697.

The Defendant's plea hearing was on August 13, 2019.   The next day, the Defendant filed a motion in case 2016 CF2 020697 seeking to extend his sentencing date until November 15, 2019. Ex. H.[6]   All of the grounds for his motion were ripe well before the plea hearing.   He purposely waited until after the plea hearing to file the motion.   The Defendant's filing of the motion demonstrates his disdain for his obligations under the plea agreement and that he does not take these court cases seriously.

During the plea colloquy in case number 17-cr-159, the Court also brought up the requirement that the Defendant complete a standard financial disclosure form.   Plea Agreement, ECF No. 84, at ¶ 10(d).   Despite multiple requests from government counsel to complete the form and provide copies of tax returns and/or consent to their release as mandated by the plea agreement, the Defendant has failed to do so.   Ex. I.

### The Defendant's Employment and Financial Condition

As part of a motion to modify his release conditions, the Defendant stated that "[h]e currently owns, or has an ownership interest in, two construction businesses, FEI and Highway & Safety Services, Inc. (HSS), one commercial development business, AF Ventures, LLC (AFV) and a zipline park, Toroverde Corp," and is "involved with two housing construction projects in Costa Rica being developed by Rock Construction Company.   Motion to Modify Release Conditions, ECF No. 22.   The Defendant filed the motion on January 24, 2018.

---

[6] The Superior Court judge denied the motion.

The Defendant made no mention of HSS, AFV, Toroverde, or Rock Construction Company to the Probation Office when discussing his employment or financial condition.   If the Defendant recently sold his interest in all of these entities and projects, it is likely that he has more assets than the minimal amount that he reported to the Probation Office.   Of course, if the Defendant had provided or consented to the release of his tax returns as required under the terms of the plea agreement, the Government would likely have a better understanding of whether the Defendant accurately reported his employment and financial condition to the Probation Office.

**The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment; to Afford Adequate Deterrence; and to Protect the Public from Further Crimes of the Defendant**

**General Deterrence**

As stated in the Introductory Commentary to Chapter 2, Part T of the Sentencing Guidelines,

> [c]riminal tax prosecutions serve to punish the violator and promote respect for the tax laws.   Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

USSG Ch.2, Pt.T, intro. comment.

"[T]the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability."   United States v. Bisceglia, 420 U.S. 141, 145.   In reality, all taxpayers do not accurately self-report their information thereby resulting in a massive amount of underreported income.   The most recent IRS estimate of the gross tax gap is for the 2008 to 2010 tax years.   See https://www.irs.gov/pub/irs-soi/p1415.pdf (defining "gross tax gap" as "the amount of true tax liability that is not paid voluntarily and timely").   The annual

estimated gross tax gap is $458 billion.   Id.   The estimated underreporting tax gap is $387 billion.

Id.   Tax fraud results in higher taxes to make up for the shortfall, costs time and money to attempt

to collect, increases the federal deficit, and deprives the government of needed funds to provide

services to citizens.

Most tax offenses are never discovered.   See United States v. Gorodetsky, 288 F.R.D. 248,

249 (E.D.N.Y. 2013).   The Defendant's tax violations were only discovered because he was being

investigated for other offenses.   The government does not have the resources to investigate and

prosecute everyone who violates our tax laws.   See United States v. Gardellini, 545 F.3d 1089,

1098 (D.C. Cir. 2008) (Williams, J., dissenting) ("The resources available for tax enforcement are

scarce and the probability of getting caught is low.").   The only mechanism to contain and perhaps

narrow the tax gap is general deterrence.

Numerous circuit courts have recognized the critical role of general deterrence in

determining a sentence for tax offenders.   See, e.g., United States v. Park, 758 F.3d 193, 201 (2d

Cir. 2014) ("[G]eneral deterrence occupies an especially important role in criminal tax offenses,

as criminal tax prosecutions are relatively rare.").   Imprisonment is "particularly" important as a

deterrent in tax fraud cases "since that crime often goes undetected."   United States v. Carlson,

498 F.3d 761, 765 (8th Cir. 2007); see also United States v. Warner, 792 F.3d 847, 861 (7th Cir.

2015) ("[E]ffective deterrence of tax crimes requires a credible threat of imprisonment.").   The

likelihood of imprisonment must provide some countervailing force to the slim possibility of

discovery and prosecution in the mind of potential tax cheats.   See United States v. Engle, 592

F.3d 495, 502 (4th Cir. 2010) ("Without a real possibility of imprisonment, there would be little

incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward

path.").

The need for general deterrence is also particularly strong for the Defendant's Mail Fraud and Money Laundering offenses.   "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." United States v. Musgrave, 761 F.3d 602, 609 (6th Cir. 2014) (internal quotations and citation omitted); see also United States v. Morgan, 635 F. App'x 423, 450 (10th Cir. 2015) (General "[d]eterrence is a crucial factor in sentencing decisions for economic and public corruption crimes.").   Government contract fraud is endemic.   Governments do not have the resources to detect and prosecute everyone who cheats in order to unlawfully obtain contracts.   The Court's sentence must send a stark message to others who may consider engaging in similar conduct that such behavior will not be tolerated and will result in a significant period of incarceration.

## Specific Deterrence

The Defendant has been convicted of nine felony offenses and eleven misdemeanor offenses.[7]   His criminal conduct is not an isolated instance or a lapse in judgment.   He has cheated and lied for years because he views himself as above the law.   A lengthy period of incarceration is necessary to deter the Defendant from committing further offenses.   A conviction without a substantial prison sentence will not dissuade him from future criminal activity and will only reinforce his belief that he can act with impunity.

Even after the blizzard of criminal convictions racked up by the Defendant, he violated the

---

[7] The Defendant's campaign finance offenses were misdemeanors at the time he committed them.   On April 27, 2012, the offenses became felonies.   See The Board of Ethics and Government Accountability Establishment and Comprehensive Ethics Reform Amendment Act of 2011, D.C. Law 19–124 (2012).

terms of the plea agreement.   The Defendant is someone who believes that there is one set of rules that apply to him and another that apply to everyone else.   The only means to deter the Defendant from future misconduct is by imposing an extensive period of incarceration so the Defendant can reflect on the breadth of his criminal conduct and fully appreciate the seriousness of his offenses.

**Respect for the Law and Just Punishment**

For the reasons discussed above, a sentence of 36 months for each count is just punishment for the Defendant and will promote respect for the law.[8]

**Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment**

There is no indication that the Defendant needs any type of training or unique medical care.

**The Kinds of Sentences Available**

The Defendant is ineligible for probation under the Guidelines since the applicable guidelines range is in Zone D.   USSG §5B1.1, comment (n.2).   The Defendant is statutorily eligible for probation for each offense under 18 U.S.C. § 3561.   However, if the Court sentences the Defendant to a term of imprisonment for any count, then the Defendant cannot be sentenced to probation on the other counts.   18 U.S.C. § 3561(a)(3).

**The Sentencing Range Established by the Guidelines and Pertinent Policy Statements**

---

[8] "When a district court sentences a defendant on multiple counts that are not statutorily required to be a certain length or to be sentenced consecutively, it 'shall determine the total punishment and shall impose that total punishment on each such count, except to the extent otherwise required by law.'"   United States v. Douglas, 910 F.3d 804, 808 (5th Cir. 2018), as revised (Dec. 19, 2018) (quoting USSG §5G1.2(b)).   "Except as otherwise required by subsection (e) or any other law, the total punishment is to be imposed on each count and the sentences on all counts are to be imposed to run concurrently to the extent allowed by the statutory maximum sentence of imprisonment for each count of conviction."   USSG 5G1.2, comment. (n.1).

The Defendant's Guidelines range is 31 to 37 months of imprisonment.   In the Presentence Investigation Report (PSI), the Probation Office suggests that the policy statement in USSG §4A1.3(b)(1) may be applicable.   PSI, ECF No. 49, at ¶ 223a.   Section 4A1.3(b)(1) provides that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."   USSG 4A1.3(b)(1).

As an initial matter, paragraph 223a in the PSI incorrectly states that the Defendant "was convicted of Tax Fraud" in case number 2016 CF2 020697.   It also mistakenly asserts that the Defendant's criminal conduct in case number 17-cr-158 "involved reimbursing others for making campaign contributions to candidates for District of Columbia political offices."   The Defendant's criminal conduct in case number 17-cr-158 is Tax Fraud, not illegal campaign contributions.   The only connection to illegal campaign contributions is that the Defendant falsely classified illegal campaign contributions as deductible business expenses to lower his tax liability.[9]

Finally, the Government notes that the Defendant was convicted of six felony offenses in case number 2016 CF2 20697.   Even without the eleven misdemeanor campaign finance convictions, the Defendant would have received one criminal history point and his Criminal History Category would still be II.   The Defendant's criminal history category does not substantially over-represent the seriousness of his criminal history or the likelihood that he will commit other crimes.

## The Need to Avoid Unwarranted Sentencing Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

---

[9] All of the falsely classified contributions occurred in 2009.   The Defendant's illegal campaign contributions in case number 2016 CF2 20697 occurred in 2012.

16

The District of Columbia Circuit has recognized, there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges."   United States v. Gardellini, 545 F.3d 1089, 1096 (D.C. Cir. 2008); see also United States v. Saez, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second.").   The Guidelines "reduce unwarranted federal sentencing disparities," Freeman v. United States, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences."   Id. at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range."   Gall v. United States, 552 U.S. 38, 54 (2007).   The Government's proposed sentence is within the Defendant's Guidelines range.   "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities."   United States v. White, 737 F.3d 1121, 1145 (7th Cir. 2013); see also United States v. Swafford, 639 F.3d 265, 270 (6th Cir. 2011) ("The point of the guidelines is to decrease sentencing disparities, an objective *furthered* by a within-guidelines sentence.").

### The Need to Provide Restitution to Any Victims of the Offense

In case number 17-cr-158, the Defendant agreed to pay $92,908 in restitution to the IRS as part of his plea agreement.

"The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, requires a district court to order a defendant to make restitution to a victim of certain specified offenses."   United

States v. Thomsen, 830 F.3d 1049, 1065 (9th Cir. 2016) (internal quotations and citations omitted).

Section 3663A(c) provides that the MVRA applies to "any offense that is . . . an offense against

property under this title . . . including any offense committed by fraud or deceit." 18 U.S.C. §

3663A(c)(1)(A)(ii).   The MVRA applies to the Defendant's Mail Fraud offense in case number

17-cr-159.

      However, the MVRA also requires that the victim suffer "a pecuniary loss."   Id. §

3663A(c)(1)(B).   The loss must be "actual and provable."   United States v. Fair, 699 F.3d 508,

512 (D.C. Cir. 2012).

      SBS performed all of the services required under the Maryland courts contract.   The "loss"

to the Administrative Office of the Courts was the intangible harm inflicted on its MBE program

by having funds paid to a non-performing MBE instead of an MBE who actually provided services.

Such a loss is not quantifiable and therefore not subject to restitution under the MVRA and Fair.

**Imposition of Consecutive Terms of Sentence to Superior Court Case 2016 CF2 20697**

      The Defendant is currently serving his sentence in Superior Court case number 2016 CF2

20697.   Under 18 U.S.C. § 3584(a), when "a term of imprisonment is imposed on a defendant

who is already subject to an undischarged term of imprisonment, the terms may run concurrently

or consecutively."   18 U.S.C. § 3584(a).   "[I]n determining whether the terms imposed are to be

ordered to run concurrently or consecutively," a Court must consider the section 3553(a) factors.

18 U.S.C. § 3584(b); see also USSG §5G1.3(d) & comment. (n.4).

      The Defendant is currently subject to an undischarged term of imprisonment imposed by a

D.C. Superior Court judge for multiple violations of the D.C. Code.   The offenses committed in

the Superior Court case involve different conduct than the instant matters.   The sentences in the

current cases should run consecutive to the sentence in the Defendant's Superior Court case.

## III.   CONCLUSION

Based on a consideration of the section 3553(a) factors, the Government respectfully requests that the Court sentence the Defendant to 36 months of incarceration and three years of supervised release for count one in case number 17-cr-158, and counts One and Three in case number 17-cr-159, with all the sentences to run concurrently to one another.   The Government requests that the terms of imprisonment for the federal cases run consecutively to the term of imprisonment imposed on the Defendant in Superior Court case number 2016 CF2 020697. Finally, the Government requests that the Court order the Defendant to pay $92,908 in restitution to the IRS.

Respectfully submitted,

JESSIE K. LIU
United States Attorney


By:     _____/s/_____
        Anthony Saler
        D.C. Bar No. 448254
        Assistant United States
        Attorney 555 4th Street, N.W.
        Washington, D.C. 20530
        Tel: 202.252.6971
        Anthony.Saler@usdoj.gov